DENNIS J. HERRERA, State Bar #139669
City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
BRIAN P. CEBALLO, State Bar #243828
JAMES F. HANNAWALT, State Bar #139657
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone: (415) 554-3911 [Ceballo]
Telephone: (415) 554-3913 [Hannawalt]
Facsimile: (415) 554-3837
E-Mail: brian.ceballo@sfcityatty.org
E-Mail: james.hannawalt@sfcityatty.org

Attorneys for Defendants
FRANK WINCH, SCOTT NEU, AUSTIN MORRIS,
R. GONZALEZ, EVAN STAEHELY, MARTIN LOGUE,
AND SCOTT BERGSTRESSER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CAVNESS,<br><br>     Plaintiff,<br><br>vs.<br><br>FRANK WINCH, SCOTT NEU, AUSTIN MORRIS, R. GONZALEZ, EVAN STAEHELY, MARTIN LOGUE, AND SCOTT BERGSTRESSER<br><br>     Defendants. | Case No. 14-CV-3403 EDL (JSC)<br><br>**DEFENDANTS FRANK WINCH, SCOTT NEU, AUSTIN MORRIS, R. GONZALEZ, EVAN STAEHELY, MARTIN LOGUE, AND SCOTT BERGSTRESSER'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: November 27, 2018<br>Time: 9:00 a.m.<br>Place: Courtroom E, 15th Floor<br><br>Trial Date: March 11, 2019 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION .....................................................................................................................1
ARGUMENT .............................................................................................................................1
    I.    LT. WINCH IS ENTITLED TO SUMMARY JUDGMENT AGAIN. ...................1
    II.    THERE IS NO EVIDENCE OF DELIBERATE INDIFFERENCE BY THE MAINLINE DEFENDANTS .................................................................................4
        A.    The Link Between Mainline Defendants And "Deputies" To Whom Plaintiff Complained Is Too Speculative To Support A Reasonable Inference That The Mainline Defendants Knew About Plaintiff's Complaints. ...................................................................................................4
    III.    PLAINTIFF'S ARGUMENTS ARE FOUNDED ON IRRELEVANT AND INADMISSIBLE EVIDENCE. ..................................................................................6
        A.    Irrelevant Hearsay About Unrelated SFSD File Storage Is Inadmissible. ....7
        B.    SFSD IA File A2015-0023 Is Inadmissible. ................................................7
        C.    No Adverse Inference Should Be Made Based On Defendant Neu's Assertion Of The Fifth Amendment Privilege. ...........................................10
        D.    SFSD's Subsequent Investigation Is Not Evidence Of Deliberate Indifference Or Conspiracy And There Is No *Monell* Claim. ....................12
    IV.    PLAINTIFF'S STATE LAW CONSPIRACY CLAIMS FAIL FOR THE SAME REASONS THE FEDERAL CONSPIRACY CLAIMS FAIL AND BECAUSE IT WAS NOT PART OF THE PLAINTIFF'S GOVERNMENT CLAIM. ........................................................................................................................12
CONCLUSION .......................................................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases**

*Akiona v. U.S.*
  938 F.2d 158 (9th Cir. 1991) ............................................................................................12

*Allen v. City of Los Angeles*, No. CV-4695 CAS (RCx)
  2012 WL 1641712 (C.D. Cal. May 7, 2012) ......................................................................8

*Anderson v. Liberty Lobby*
  477 U.S. 242, 252 (1986).....................................................................................................6

*Castro v. Cty. of Los Angeles*
  833 F.3d 1060 (9th Cir. 2016) .............................................................................................3

*DirecTV, Inc.*
  366 F. Supp. 2d 132 (D. Maine 2005) ...............................................................................12

*Doe ex rel. Rudy-Glanzer v. Glanzer*
  232 F.3d 1258 (9th Cir. 2000) .....................................................................................10, 11

*Duran v. Maywood*
  221 F.3d 1127 (9th Cir. 2000) .............................................................................................9

*Gates v. Rivera*
  993 F.2d 697 (9th Cir.1993) ................................................................................................9

*Geiserman v. MacDonald*,
  893 F.2d 787 (5th Cir. 1990) ...............................................................................................6

*Glover v. BIC Corp*
  6 F.3d 1318 (9th Cir. 1993) ...............................................................................................12

*McCarthy v. Geist*, No. C16-06782 WHA
  2018 WL 2047396 (N.D.C.A. May 2, 2018) ......................................................................6

*Med. Lab. Mgmt. v. Am. Broadcasting Cos., Inc.*
  306 F.3d 806 (9th Cir. 2002) .............................................................................................12

*Mendelsohn v. Capital Underwriters*
  490 F. Supp. 1069 (N.D. Cal. 1979) ....................................................................................6

*Morris v. Long*
  592 F. App'x 579 (9th Cir. 2015) ........................................................................................9

*Nation–Wide Check Corp. v. Forest Hills Distribs., Inc.*
  692 F.2d 214 (1st Cir. 1982) .............................................................................................12

*Nationwide Life Ins. Co. v. Richards*
  541 F.3d 903 (9th Cir. 2008) .............................................................................................10

*Perez v. Seafood Peddler of San Rafael, Inc.*
   Case No. 12-cv-00116-WHO, 2014 WL 2810113 (N.D. Cal. June 20, 2014) ..........................11

*Phillips v. Palubicki*
   91 F.3d 154 (9th Cir. 1996) ..................................................................................................9

*Prime Media Grp., LLC v. Acer A. Corp.*
   Case No. 12-CV-05020-BLF, 2015 WL 527836 (N.D. Cal. 2015) ..........................................10

*Taylor v. Michigan Dept. of Corrections*
   69 F.3d 76 (1995) .................................................................................................................3

*United States v. Ramos–Atondo*
   732 F.3d 1113 (9th Cir. 2013) ...............................................................................................9

**Rules**
Federal Rules of Evidence 401 .................................................................................................10

Federal Rules of Evidence 402 ............................................................................................8, 10

Federal Rules of Evidence 403 .......................................................................................7, 9, 10

Federal Rules of Evidence 404 .................................................................................................10

Federal Rules of Evidence 404(b) ..............................................................................................9

Federal Rules of Evidence 802 ...................................................................................................7

**INTRODUCTION**

Lt. Winch is entitled to summary judgment in his favor because, according to Plaintiff's version of the facts, Lt. Winch acknowledged Plaintiff's desire to move from B-2 and passed the information along so the matter could be addressed. Since 2015, Plaintiff changed his testimony about the date he spoke to Lt. Winch, pushing back the date of the conversation from October 13, 2011, first to October 12 in a sham declaration, and now to October 11 in opposition to the present motion. The record shows that October 11, 2011 was the day Lt. Winch last worked before Plaintiff's injury on October 13, 2011. What remains unchanged in the record is Plaintiff's testimony that based on Plaintiff's report to Lt. Winch a deputy was instructed to move Plaintiff. Therefore, Plaintiff's facts are that Lt. Winch passed along Plaintiff's desire to be moved before he left his shift on October 11. There is no rule or policy requiring a supervisor to do more in response to a generalized complaint, and Lt. Winch's conduct does not satisfy the deliberate indifference standard which requires more than negligence.

Defendants Neu, Morris, Gonzalez, Staehely, Logue, and Bergstresser ("Mainline Defendants") are entitled to summary judgment in their favor because Plaintiff has no evidence that the Mainline Defendants were involved in the alleged deprivation of Plaintiff's constitutional rights. Plaintiff's version of the facts, namely that in the two to four days leading up to October 13, 2011, he told a handful of unknown deputies and Lt. Winch that he felt threatened, does not support an inference that any of the deputies working the day shift on October 12 and October 13 knew about a threat to Plaintiff's safety and were deliberately indifferent to his welfare.

**ARGUMENT**

**I.   LT. WINCH IS ENTITLED TO SUMMARY JUDGMENT AGAIN.**

The same legal analysis applies now that applied when granting summary judgment for Lt. Winch in 2016. (Dkt 26)  The only difference in the record is that Plaintiff has changed the date that he asked to be moved from B-2 from the day of the fight, Thursday, October 13, to Tuesday, October 11, the last day records show that Lt. Winch worked prior to the fight. When the Plaintiff opposed Defendants' summary judgment motion in 2015, he tried to roll back the date of his conversation with

Lt. Winch to Wednesday October 12 with a sham declaration. Now Plaintiff says the conversation took place on October 11. But he has not changed his testimony that he provided Lt. Winch with generalized statements about wanting to get out of B-2 because "kids were fighting in there and stuff," and Lt. Winch acknowledged that he "would do something about it." [Hendrick Decl., Exh 1 p. 64]

The parties concur that the viability of Plaintiff's Section 1983 against Lt. Winch requires Plaintiff to raise a triable issue of fact on two issues: 1) whether Lt. Winch made an intentional decision to place Plaintiff and Mr. Saunders in the same cell; and 2) whether he did so with knowledge of any facts that would cause a reasonable officer to conclude that Mr. Saunders posed a threat to Plaintiff. [See, e.g., Pl. Opp. at 13:11-17]. The undisputed evidence shows that Plaintiff can establish neither of these issues. Therefore, summary judgment should be granted on Plaintiff's Section 1983 claim against Defendant Winch.

Plaintiff cannot save his claims against Lt. Winch by now asserting that Lt. Winch failed to ensure that Plaintiff was moved before the end of Lt. Winch's shift on October 11. It is undisputed that Plaintiff's statements to Lt. Winch were generalized statements, namely he was "having a hard time," "I want to move from this cell," "I need to get out of here," [Hannawalt Decl., Ex L, Depo of Plaintiff, Vol II, 80:12-18, 86:1-18] and "kids were fighting in there and stuff." [Hendrick Decl., Exh 1 p. 64]. Plaintiff concedes that he never identified Mr. Saunders by name to any deputies as the reason he wanted to move from the cell. [Hannawalt Decl., Ex L, Depo of Plaintiff, Vol I, 79:4-12]. Just as in 2015, there are no facts in the record from which to infer that Lt. Winch knew (on either October 11 or October 13, 2011) that Plaintiff faced a substantial risk of serious harm, and that failure to ensure that Plaintiff was moved the same day based on Plaintiff's expression of generalized concern amounted to deliberate indifference. [Dkt. 26, 7:21-8:4]

What Lt. Winch, a supervisor, did in response to Plaintiff's generalized concerns was to communicate to some unknown jail staff to move Plaintiff, according to Plaintiff's testimony that an unknown African American deputy told Plaintiff on October 13 that he was instructed to move Plaintiff. [Hannawalt Decl., Ex L 63:16-65:6; 215:20-216:2] It is undisputed for the purposes of this motion that Lt. Winch was told about Plaintiff's desire to move from B-2 and that he took supervisorial action in response. It is also undisputed for the purposes of this motion that Lt. Winch

was off duty on October 12 and October 13.  Lt. Winch had no legal duty to move Plaintiff before the end of his shift on October 11, although that may be his personal practice.  It was not deliberate indifference for Lt. Winch to rely on jail staff to carry out a directive to either move Plaintiff and/or investigate the credibility of Plaintiff's concerns.  Even if Lt. Winch may have been negligent in not following up personally before leaving work on October 11, deliberate indifference requires more than negligence.  *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)  Therefore, just as in 2015, Lt. Winch is entitled to summary judgment in his favor on the current record in this case.

*Taylor v. Michigan Dept. of Corrections,* 69 F.3d 76 (1995) does not support finding a triable issue of material fact on the issue whether Lt. Winch was deliberately indifferent when he communicated Plaintiff's housing concern to jail staff and left his shift without moving Plaintiff from B-2.  In *Taylor*, a plaintiff sought to hold a warden liable based on failure to adequately supervise staff to whom he had delegated authority to approve transfer orders, resulting in the transfer of vulnerable prisoners into facilities where the prisoners were at increased risk of rape.  Where the record showed the warden's actual knowledge in the breakdown in proper workings in his department, there was sufficient evidence to raise a triable issue of fact whether the warden was carrying out his duty to develop and implement operating procedures that required a review of inmate files before transfers were authorized by the warden's delegates.  Plaintiff does not allege Lt. Winch failed to supervise staff.  Nor is there evidence in the record that Lt. Winch had any knowledge that his communication about Plaintiff's housing concerns would not be addressed between October 11 and October 13.

In trying to gin up a dispute of fact, Plaintiff makes several false and misleading statements in his argument that a jury could conclude Lt. Winch knew Plaintiff faced a risk of serious harm in B-2 that manifest days later.  Some of those misrepresentations are addressed below:

| **Misrepresentation of the Record**: | **The Record:** |
|---|---|
| "Mr. Cavness told SFSD personnel and *several mainline deputies* that he felt threatened in his cell by an inmate who was well known to be violent," [emphasis added]<br><br>Oppo. p.14:21-23 | There is no evidence that Cavness told mainline deputies he felt threatened<br><br>The evidence is that Cavness did not tell anyone he was being threatened by Saunders |

| | |
|---|---|
| "Winch himself admitted Saunders's violent tendencies were well known"<br><br>Oppo 14:11-12 | Lt. Winch testified was that he did not regard Mr. Saunders as a violent person, and that he was aware of other fights involving Mr. Saunders *that took place after October 13, 2011.* (emphasis added) Ex. 7 Winch Dep, I at 110-111. |
| "Defendants contention that Cavness was not particularly vulnerable to Saunders is belied by the record"<br><br>Oppo. 15:5-6 citing Ex 42 | The Administrative Segregation Questionnaire cited by Plaintiff states that the reason Mr. Cavness was placed in Administrative Segregation in February 2013 was that he had received a 38 years to life sentence, and not that he was being put in Administrative Segregation on that occasion because he was violent or assaultive. [Hendrick Decl., Ex 42]<br><br>The Plaintiff's housing card shows that Plaintiff was charged with murder, had a history of being assaultive, and had been in fights and verbal confrontations with other prisoners. [Hannawalt Decl., Ex N] |

## II. THERE IS NO EVIDENCE OF DELIBERATE INDIFFERENCE BY THE MAINLINE DEFENDANTS.

### A. The Link Between Mainline Defendants And "Deputies" To Whom Plaintiff Complained Is Too Speculative To Support A Reasonable Inference That The Mainline Defendants Knew About Plaintiff's Complaints.

It is undisputed for purposes of this motion that Plaintiff complained over a few days to unidentified deputies outside B-2 and off the mainline.[1]  [Hannawalt Decl., Ex L, Depo of Plaintiff, Vol II, 84-86, Vol II, 86:16-87:1, Vol I, 79:16-18, Vol II, 105:6-11]  The argument that the Mainline Defendants have a duty to "know everything" about all the inmates under their supervision is not the legal standard, even if it is their Chief Deputy's aspirational goal.  There is no evidence that a conflict

---

[1] On this point, Plaintiff again tries to create triable issue of fact by misrepresenting the record. Plaintiff writes on page 18 of his Opposition that "Mr. Cavness had told Winch and every deputy with whom he interacted, *including several deputies on the mainline,* that *Saunders had threatened him* and that Plaintiff wanted to be moved." [emphasis added, Oppo p.18: 11-13]  This is false.  Plaintiff never identified the deputies he spoke to as mainline deputies. He said he told deputies he wanted to move from B-2 when he was outside his cell.  Further, Plaintiff admits he did not tell every deputy with whom he had contact, only three or four deputies over two to four days. [Ex L , Depo of Plaintiff Vol. I 79:16-18, Vol. II 105:6-11. 195:15-17] Plaintiff could not identify any of the Mainline Defendants as deputies he informed about feeling threatened [Hannawalt Decl., Ex L, Depo of Plaintiff, Vol II, 158:10-160:12], and he admits he did not identify Mr. Saunders as the person threatening him. [Hendrick Decl. Ex 1 78:10-79:6].

between Plaintiff and Mr. Saunders was so obvious during the day shift on October 12 and/or October 13 that an observant deputy who did not see it coming was anything other than negligent.  This is particularly true where there is no evidence the Mainline Defendants were told that Plaintiff felt threatened by Mr. Saunders, and Plaintiff admits he did not bring up his safety concerns in front of his cellmates, i.e. while on the mainline.  Plaintiff testified that he witnessed a fight between Mr. Saunders and another prisoner in B-2.  But Plaintiff presents no evidence that the fight was witnessed by any jail staff, that it lasted long enough that it should have been discovered by jail staff, or what time of day or night the fight took place to determine which mainline deputies were on duty at the time the fight took place.  There is no evidence in the record that jail staff knew Mr. Saunders had fought with anyone in B-2 before October 13, 2011, or that Mr. Saunders caused an earlier eviction from B-2.  The absence of any notation on Mr. Saunders' housing card is evidence that Mr. Saunders' role in the fight was unknown to jail staff before October 13.  The October 14, 2011 e-mail evidence Plaintiff cites in support of the proposition that jail authorities knew Mr. Saunders had attacked someone in B-2 before October 13 is Hendrick Decl., Ex 47, 117.  That email reports that the fight between Plaintiff and Mr. Mr. Saunders resulted in a second eviction from B-2.  The email reports prisoners saying Plaintiff was the source of the problems in B-2.  The email says nothing about Mr. Saunders assaulting another person before the fight with Plaintiff.

The policy of deputies briefing their replacements about matters of significance on a post when leaving a post does not support an inference that the Mainline Defendants would have learned of Plaintiff's safety concerns.  For that information to reach the Mainline Defendants on the DT2 shift, the information would have to pass from deputies at other posts to the mainline, and there is no such briefing policy.  Furthermore, the information would have to pass between deputies for up to four shifts before the Mainline Defendants, as part of DT2, first came on duty during the week of the fight. If someone failed to act on Plaintiff's concerns, there is no evidence that it was any of the Mainline Defendants.  Plaintiff needs more than evidence that someone at the jail failed to follow-up on his complaints.  To defeat summary judgment, Plaintiff needs to present admissible evidence that supports a reasonable inference that the Mainline Defendants exercised reckless disregard in failing to follow-up on his complaints.  When ruling on a defendant's motion for summary judgment or a directed

verdict in favor of plaintiff, mere existence of a scintilla of evidence in support of the plaintiff's position will not be sufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986). Here, Plaintiff presents evidence that at best supports only speculation. The requirement that court resolve all doubts in favor of the party opposing summary judgment is not an invitation to speculation. *Mendelsohn v. Capital Underwriters,* 490 F. Supp. 1069, 1085 (N.D. Cal. 1979).

*McCarthy v. Geist*, No. C16-06782 WHA, 2018 WL 2047396 (N.D.C.A. May 2, 2018) is the only post-Castro decision failure to protect case in the 9th Circuit. Plaintiff's attempt to distinguish the case as applied to the Mainline Defendants fails. Plaintiff writes that there is ample evidence Plaintiff told Lt. Winch and five other deputies that he wanted to move from B-2, but there is no evidence that any of the Mainline Defendants were among the people to whom Plaintiff complained. Just as in *McCarthy*, Plaintiff here relies on the evidence that he informed some jail staff about a potential risk as evidence that other deputies knew about that risk.

Plaintiff argues there are two bases for inferring a conspiracy among the Mainline Defendants. First, Defendants were aware of Plaintiff's complaints about another prisoner, yet in violation of jail policy they collectively and without explanation disregarded his requests to be moved. [Oppo. 17:18-18:1] However, there is insufficient evidence to support a reasonable inference that the Mainline Defendants were aware of Plaintiff's complaints. There is no evidence any Mainline Defendant violated jail policy in his interactions with Plaintiff, ever. And there is no direct evidence the Mainline Defendants acted "collectively" with regard to Plaintiff's housing concerns, nor is there evidence that supports a reasonable inference that any of the Defendants acted "collectively" with regard to Plaintiff's housing concerns. Second, Plaintiff relies on improper, inadmissible evidence of misconduct by a single Defendant in 2015 to argue the existence of a jail-wide conspiracy in 2011.

### III. PLAINTIFF'S ARGUMENTS ARE FOUNDED ON IRRELEVANT AND INADMISSIBLE EVIDENCE.

A party cannot attempt to create fact issue, for summary judgment purposes, with evidence of facts that cannot be proved at trial. *Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir. 1990).

### A.     Irrelevant Hearsay About Unrelated SFSD File Storage Is Inadmissible.

Defendants object to Exhibit 44 to the Hendrick declaration, a news article about matters unrelated to the present case. The article is hearsay and therefore inadmissible. Fed. R. Evid. 802. The article has nothing to do with the allegations of the present lawsuit and so the exhibit is irrelevant and therefore inadmissible. Fed. R. Evid. 403.

### B.     SFSD IA File A2015-0023 Is Inadmissible.

Defendants object to Exhibits 35-41 to the Hendrick declaration, statements and a phone record summary taken from SFSD personnel records, namely SFSD Internal Affairs ("IA") File A2015-0023. The only defendant in the present case accused of wrongdoing in Exhibits 35-41 is Defendant Neu. None of the other Defendants is implicated. Plaintiff attempts to use material from SFSD personnel records to stretch improper character evidence about Defendant Neu's conduct in 2015 into a jail-wide conspiracy in 2011. The evidence of subsequent allegations of misconduct is the kind of evidence excluded in civil rights cases under Fed R. Evid. 403 as being more prejudicial than probative, even where there is similarity between the alleged misconduct and the facts of the case at issue – a feature missing in the present case.

Plaintiff never asked for the names of the jail staff working the DT2 shift in discovery. Plaintiff's document request asked for documentary evidence that Lt. Winch and Deputy Fields were not working on October 13, 2011. When that record was produced with redacted names of deputies who were on duty at CJ-4 on October 13, 2011, Plaintiff then asked the court to order production of an unredacted copy of the document. The court granted Plaintiff's request. The names on the document did not jog Plaintiff's memory about which deputies he asked to move him from B-2. But the Plaintiff had read news articles about in 2015 that reported Defendant Neu was allegedly involved in misconduct in 2015. Discovering Defendant Neu's name on the roster of deputies who worked the day shift at CJ-4 on October 13, Plaintiff added Defendant Neu as a defendant "on advisement of counsel," along with other deputies that worked posts on the mainline during the DT2 shift on October 13. Amending the complaint in 2018, Plaintiff tries to make his case about the so-called "fight club," re-drafting the complaint to reference acts of misconduct in 2015 having nothing to do with Plaintiff or his complaints to Lt. Winch and/or other unidentified deputies. There is no *Monell* claim. Therefore,

the acts of deputies other than the Defendants are not at issue. Whether two or three deputies other than Deputy Neu were allegedly involved in misconduct in 2015 has no relevance in the present case. As evidenced by Plaintiff's opposition to the present motion, Plaintiff tries to build a case from law enforcement personnel records revealing allegations of bad character on the part of one of the Defendants arising from dissimilar facts and circumstances, and which allegedly took place three and half years after the October 13, 2011 incident at issue in this case. Plaintiff doesn't stop with trying to use this improper character evidence against Defendant Neu. He seeks to use improper character evidence about Defendant Neu to support a claim that six other Defendants must have been deliberately indifferent to Plaintiff as well. The evidence of alleged misconduct by Defendant Neu, as well as the related administrative findings, should be excluded under Federal Rules of Evidence 402, 403, 404.

There is no tenable, non-pretextual basis to contend that the so-called "fight club" material is relevant to issues such as motive, intent, or knowledge. Plaintiff's objective in presenting this evidence is to support the improper inference that Defendant Neu, and other defendants by association, had a penchant for misconduct, and acted in conformity with that character in October 2011. Evidence related to an IA investigation that took place in 2015 is therefore inadmissible character evidence.

*First*, these materials do not make any fact of consequence more or less probable. Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is "relevant," when it has a tendency to prove or disprove a fact of consequence in the action. *Id*. In this case, the so-called "fight club" investigation materials about events that took place in March 2015 involving only Defendant Neu among the Defendants are unrelated to this incident and do not prove or disprove whether or not Defendants acted with deliberate indifference in 2011. *Allen v. City of Los Angeles*, No. CV-4695 CAS (RCx), 2012 WL 1641712, at *3 (C.D. Cal. May 7, 2012) (granting defendants' motion in limine to exclude "personnel complaint investigations, internal affairs investigations and conclusions, prior civil suits involving the officers, and unrelated allegations against the officers in order to prove the officers' liability in this instance").

***Second***, even if such evidence were relevant (and it is not), its probative value is substantially outweighed by the risk of unfair prejudice to Defendants, including the significant potential for confusing the issues and misleading the trier of fact.  Fed. R. Evid. 403.

***Third***, Rule 404(b) prohibits admission of evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Here, Plaintiff argues that because Defendant Neu engaged in misconduct in 2015, all of the Defendants must have acted in likewise in 2011.  Such "other acts" evidence is inadmissible for this purpose, and is also irrelevant and highly prejudicial.

As the Ninth Circuit has explained, "'[c]haracter evidence is normally not admissible in a civil rights case.'" *Phillips v. Palubicki*, 91 F.3d 154 (9th Cir. 1996) (quoting *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir.1993)).  And, as noted above, "defendants' past conduct [does] not bear on the[] issues" in this case—i.e., whether Defendants were deliberately indifferent to Plaintiff's safety concerns in 2011.  *Phillips*, 91 F.3d 154. at 154.  The Ninth Circuit has further instructed that "other acts" evidence is admissible under Rule 404(b) only when four requirements are met:  (1) there must be sufficient proof for the jury to find that the Defendant committed the other act, (2) the other act must not be too remote in time, (3) the other act must be introduced to prove a material issue in the case, and (4) the other act must, in some cases, be similar to the offense charged.  *Duran v. Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000).

Exhibits 35-41 to the Hendrick declaration do not satisfy these requirements.  And "even if all four conditions are met, the evidence may still be excluded if under Rule 403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice."  *Id*. at 1133; *see also Morris v. Long*, 592 F. App'x 579, 580 (9th Cir. 2015) (affirming district court's exclusion of "other acts" evidence under F.R.E. 404(b) even though the proffered evidence tended "slightly 'to prove a material point'" (quoting *United States v. Ramos–Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013)).

Here again Plaintiff's arguments misrepresent the record in order to try to get improper character evidence into the case:

| **Misrepresentation of the Record**: | **The Record:** |
|---|---|
| "[There is] supporting documentation that that defendants conspired for their own entertainment to put inmates in harm's way" Oppo. 18:3-4 | SFSD IA documentation submitted in opposition to the present motion regarding so-called "fight club" did not involve ay defendant other than Neu. [Hendrick Decl. Ex 35-41] |
| "there is abundant evidence that at least some defendants ran a "fight club" in CJ 4 Oppo. p.21:7 | SFSD IA documentation submitted in opposition to the present motion regarding so-called "fight club" did not involve any defendant other than Neu. [Hendrick Decl. Ex 35-41] |

### C. No Adverse Inference Should Be Made Based On Defendant Neu's Assertion Of The Fifth Amendment Privilege.

To obtain an adverse inference, Plaintiff must first demonstrate that (1) there is a substantial need for the information; (2) there is not another less burdensome way of obtaining that information; and (3) there is independent evidence of the fact about which the party refuses to testify. *Nationwide Life Ins. Co. v. Richards,* 541 F.3d 903, 912 (9th Cir. 2008); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264-65 (9th Cir. 2000); *Prime Media Grp., LLC v. Acer A. Corp.,* Case No. 12-CV-05020-BLF, 2015 WL 527836, at *2 (N.D. Cal. 2015). Otherwise, no negative inference can be drawn. *Nationwide*, 541 F.3d at 912; *Glanzer*, 232 F.3d at 1264-65. Further, the court must determine whether the evidence would be admissible, namely whether it is relevant and "whether the value of presenting such evidence was substantially outweighed by the danger of unfair prejudice that drawing the adverse inference would have represented" to the party. *Glanzer*, 232 F.3d at 1266; *see Nationwide*, 541 F.3d at 912; Fed. R. Evid. 401, 402, and 403. Plaintiff fails to meet these requirements.

Defendant Neu asserted his Fifth Amendment rights in response to questions about other allegations of misconduct or discipline unrelated to the present case. The Court should exclude evidence and argument related to other allegations of misconduct and discipline as irrelevant, unduly prejudicial, and a waste of time. Fed. R. Evid. 401, 402, 403. Further, such evidence is inadmissible to show defendants' propensity for misconduct. Fed. R. Evid. 403, 404.

Because this evidence is not admissible, an adverse inference cannot be drawn from the Defendant Neu's silence. *Glanzer*, 232 F.3d at 1266. In *Glanzer*, the Ninth Circuit held that where

certain evidence – in that case, results of a penile plethysmograph – would be inadmissible even if discovered, the party's "right to a fair proceeding is not curtailed because this evidence, even if discovered, would not have made its way into the court room." *Id*. As the Court explained,

> It is easy to imagine the scenario that would have taken place had Rudy–Glanzer's counsel asked at trial the same question that he did during Elroy's deposition. Upon asking the question, Elroy's counsel would have objected on relevance grounds, linking the unreliability of the test to unfair prejudice, and the trial judge would have sustained such an objection, as he did through his rulings on the various motions in limine, and thus Elroy would have never had to assert his Fifth Amendment right to begin with. Therefore, it is hard to imagine why we should let the negative inference stemming from the events at the deposition come into the court room when no invocation of the Fifth Amendment privilege against self-incrimination would have occurred in the first place had the question been asked to Elroy directly at trial.

*Id.* at 1267.  Here, because allegations of misconduct and discipline unrelated to the present case are irrelevant and unduly prejudicial these matters are inadmissible, and so a negative inference is not permissible.  In addition, because the information is irrelevant and otherwise inadmissible, Plaintiff cannot demonstrate a substantial need for this information.  Thus, Plaintiff fails to meet the first prong of the balancing test, and the adverse inference is not warranted. *Glanzer*, 232 F.3d at 1267.

Plaintiff also cannot demonstrate that there is no alternative method of establishing the facts, and must prove independent evidence of the specific fact at issue.  *Glanzer*, 232 F.3d at 1266. Plaintiff has not demonstrated that there is not another, less burdensome way of obtaining the information about the closeness of Defendants' relationships with one another off duty.  In fact, Plaintiff asked each Defendant in deposition about their off duty relationships with the other defendants and none testified about being close with Defendant Neu.  See also Hendrick Decl. Exh. 36 CCSF 3516, where Defendant Neu states that he does not interact with Defendant Staehely personally.

Plaintiff presents no independent evidence to support a negative inference that Defendant Neu and the other Defendants were close off duty, were members of a Police Officers motorcycle club, or the existence of an "850 mob." *See Glanzer*, 232 F.3d at 1266 (no adverse inference, because "to draw the inference that the test was taken, [proponent] has to offer some other proof that indeed such an event occurred [and] [s]he has failed to do so"); *Perez v. Seafood Peddler of San Rafael, Inc.*, Case No. 12-cv-00116-WHO, 2014 WL 2810113, at *6 (N.D. Cal. June 20, 2014) (analyzing the specific questions asked and not answered, and declining to give a negative inference instruction where

defendants did not provide any evidence of the fact at issue); *DirecTV, Inc.*, 366 F. Supp. 2d 132, 138-139 (D. Maine 2005) (no adverse inference where DirecTV failed to produce independent evidence).

### D. SFSD's Subsequent Investigation Is Not Evidence Of Deliberate Indifference Or Conspiracy And There Is No *Monell* Claim.

Defendant objects to evidence relating to any SFSD shortcomings in their investigation following the October 13, 2011. There is no *Monell* claim, nor any claim that the subsequent investigation caused Plaintiff harm. Instead, drawing the negative inference for which Plaintiff argues is essentially an evidence spoliation claim. Here, none of the Defendants directed the investigation, and none of the investigators are alleged co-conspirators. Courts discussing the admission of spoliation evidence have stated that a negative inference can be drawn only against the "party or witness responsible for [the alleged] behavior." *Glover v. BIC Corp,* 6 F.3d 1318, 1329 (9th Cir. 1993); *see also Med. Lab. Mgmt. v. Am. Broadcasting Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) ("This power includes the power to sanction the responsible party by instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party"). The negative inference is based on " 'two rationales, one evidentiary and one not.' " *Akiona v. U.S.*, 938 F.2d 158, 161 (9th Cir. 1991) (quoting *Nation–Wide Check Corp. v. Forest Hills Distribs., Inc.,* 692 F.2d 214, 218 (1st Cir. 1982)). The evidentiary rationale reflects "the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document." *Nation–Wide Check Corp.*, 692 F.2d at 217. The other rationale is punitive: "[a] party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant." *Akiona,* 692 F.2d at 161. Both of these rationales are undercut where, as here, someone other than the party against whom the inference will be drawn allegedly failed to gather evidence.

### IV. PLAINTIFF'S STATE LAW CONSPIRACY CLAIMS FAIL FOR THE SAME REASONS THE FEDERAL CONSPIRACY CLAIMS FAIL AND BECAUSE IT WAS NOT PART OF THE PLAINTIFF'S GOVERNMENT CLAIM.

Contrary to Plaintiff's arguments, the scope of Plaintiff's government claim was that he asked Defendant Winch to move him from cell B-2 for his safety and then he was assaulted. The only other

Deputy mentioned in the claim is Deputy Fields, who is no longer a Defendant. [Hannawalt Decl. Exh A]  No other defendants were implicated, and no conspiracy was claimed.  Therefore, to the extent Plaintiff's third cause of action purports to be a state law claim, it is barred as a matter of state law.

## CONCLUSION

Plaintiff submits a lot of exhibits but provides no admissible evidence raising a triable issue of material fact for a reasonable jury to conclude that any of the Defendants were deliberately indifferent to Plaintiff's welfare in the second week of October 2011.  Therefore, Defendants respectfully request the Court to enter summary judgment in their favor.

Dated:  November 13, 2018

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Deputy
BRIAN P. CEBALLO
JAMES F. HANNAWALT
Deputy City Attorneys


By: */s/  James F. Hannawalt*
JAMES F. HANNAWALT
Attorneys for Defendants

FRANK WINCH, SCOTT NEU, AUSTIN MORRIS, R. GONZALEZ, EVAN STAEHELY, MARTIN LOGUE, AND SCOTT BERGSTRESSER